## PROVIDENCE COUNTY.

---

JAMES S. PHETTEPLACE *vs.* FREDERICK A. BUCKLIN.

The surety on an executor's bond, after the malversation and insolvency of his principal, drew his check in favor of the testamentary beneficiaries and deliv-

ered them to the executor who distributed them. One of these checks was in favor of a legatee who, without leaving lineal descendants, predeceased the testator, and whose legacy had thus lapsed, the legatee's death being unknown to the executor and to the surety. This check was received by the personal representative of the legatee, collected, and the amount distributed by him according to the legatee's will.

*Held,* that the surety could recover the amount of the check from the legatee's administrator.

One who in ignorance of the facts pays money, which he is not liable to pay, may recover it, unless it is inequitable to permit such recovery.

Such inequity did not arise from the legatee's administrator having paid out the money, in the absence of proof that he was ignorant of the legatee's death, and of proof that he had unsuccessfully striven to re-obtain the money.

*Query,* whether if he had so unsuccessfully striven an inequity would have arisen ; whether such inequity could arise except through *laches* or negligence in demanding on the part of the surety, whereby the legatee's administrator was damnified.

PLAINTIFF'S petition for a new trial.

*June* 12, 1893. MATTESON, C. J. This is an action of *assumpsit* to recover money paid to the defendant in ignorance of facts. The case was heard by the Court of Common Pleas, without a jury, and judgment was rendered for the defendant for his costs. The plaintiff petitions for a new trial and alleges that the judgment was against the evidence. The facts, which are undisputed, as shown by the report of the testimony, are as follows : Jane M. Woodward, late of Providence, died leaving a last will and testament in which William G. R. Mowry, also late of Providence, deceased, was named as executor and who qualified as such by giving bond with Nathaniel S. Mowry and the plaintiff as sureties. The executor was not related to any of the persons interested under the will, nor does it appear that he had ever known Catherine C. Flagg who was named in the will as a legatee. The executor, becoming involved financially, misapplied the funds of the estate of the testatrix and became, as did also Nathaniel S. Mowry, the plaintiff's co-surety, utterly insolvent. The plaintiff, knowing the condition of the executor and his co-surety and recognizing the liability which he had incurred as surety, requested his principal to furnish him with a list of the legatees to whom he was liable, and on receiving it on or about August 1, 1891, made his checks

payable to the legatees named in the will for the amounts of their respective legacies and gave them to the executor for delivery to the respective legatees.   One of these checks was payable to Catherine C. Flagg, who, though named in the will as a legatee, had died without leaving a lineal descendant, in St. Louis, Mo., August 29, 1881, several years prior to the death of the testatrix.   The plaintiff had no knowledge of her death, but supposed, and was led to suppose by the list furnished him by the executor, that she was then living ;   nor is there any evidence that the executor knew, at the time of furnishing the list to the plaintiff and the delivery of the check, of her decease.   The check was delivered by the executor to the defendant and by him endorsed, " Estate of Catherine C. Flagg, Frederick A. Bucklin, Administrator," and deposited in bank and paid by the bank on which it was drawn through the clearing house and charged in the plaintiff's account.   Two months or so after the delivery of the check to the defendant, the plaintiff first learned of the decease of Catherine C. Flagg and that she died prior to the testatrix, when called on by the attorney of the residuary legatees to pay them the amount of the legacy given to her, but which had lapsed by her death without a lineal descendant prior to the death of the testatrix.   In the meantime, the defendant, on or about September 2, 1891, had distributed the money received on the check to the legatees of Catherine C. Flagg, of whose estate he was administrator.   One of these legatees resided in Providence and the other in Melbourne, Australia.   In November, following, a written demand for the return of the money was made by the executor on the defendant.   As the defendant did not comply with this demand, the plaintiff brought this suit.

As we have seen, the case does not show that either the plaintiff or the executor knew, or had reason to know, at the time of the delivery of the check to the defendant that Catherine C. Flagg had died before the testatrix leaving no lineal descendant, so that the legacy to her had lapsed.   The check, therefore, on which the defendant obtained the money sued for was delivered in ignorance of facts by reason of which

neither the executor nor the plaintiff as his surety was under
any liability to the defendant. The money obtained by the
defendant on the check was money for which there was no
consideration and which the defendant in justice and good
conscience was not entitled to receive. The principle is well
settled that if a person pays money which he was not liable
to pay in ignorance of the facts, he may recover the money
so paid. *Garland* v. *Salem Bank,* 9 Mass. 408 ; *Mayer* v.
*The Mayor, &c.,* 63 N. Y. 455 ; *The Kingston Bank* v.
*Eltinge,* 40 N. Y. 391 ; and see note to *Mariott* v. *Hampton,*
3 Smith's Lead. Cas. \*400 *sq.* It is, however, subject to the
qualification that if it is inequitable to allow a recovery, the
money cannot be recovered, but the person making the pay-
ment must bear the loss. *Mayer* v. *The Mayor, &c.,* 63 N. Y.
455. The defendant seeks to bring himself within this qual-
ification and contends that having paid the money received
from the plaintiff to the legatees under the will of Catherine
C. Flagg, one of whom resides in Australia, and is, there-
fore, not readily accessible, before the plaintiff or the execu-
tor demanded repayment, his position is so changed that it
would be inequitable to allow the plaintiff to recover. We
do not think it is enough to relieve the defendant from lia-
bility that he has paid the money to others, even though such
payment was made before a repayment was demanded. He
must show that a recovery by the plaintiff would be inequi-
table. If at the time he received the plaintiff's money he
knew that Catherine C. Flagg had died before the testatrix,
leaving no lineal descendant, so that the legacy to her had
lapsed, he was bound to have communicated those facts to
the plaintiff or to the executor. When a person pays money
in ignorance of circumstances with which the receiver is ac-
quainted, and which if disclosed would have prevented the
payment, the parties do not deal on equal terms and the
money is held to be unfairly obtained and may be recovered.
*Martin* v. *Morgan,* 1 Brod. & Bing. 289 ; *George* v. *Taylor,*
55 Tex. 97 ; 8 Amer. & Eng. Encyc. Law, 645, note 4 ; Kerr
on Fraud and Mistake, 99. The testimony on the part of the
defendant does not negative such a state of facts, and cer-

tainly, if such a state of facts existed, it would not be inequitable to permit the plaintiff to recover, even if the defendant had paid the money to others before demand for its repayment.

Again, assuming that the defendant had no such knowledge, but received the money innocently, he should at least show that he has made some effort to restore the money, or that such effort would be unavailing. The testimony does not show that he has made the slightest effort in that direction, not even that he has requested the legatee here in Providence to give back the portion of the money received by such legatee. It is possible that a simple request to the legatees, accompanied by a statement of the facts showing the injustice of their retention of the money, would result in their returning it to be restored to the plaintiff. Until all reasonable efforts have been made by the defendant to get back the money and have proved unavailing, how can it be said that it would be inequitable to permit a recovery?

But assuming, again, that such efforts had been made and had proved unavailing, we think it may well be doubted whether such a state of facts would be enough to render a recovery by the plaintiff inequitable. To have that effect must there not be something besides the mere payment of the money by the plaintiff which has caused the position of the defendant to be changed? Must there not be some negligence or *laches* on the part of the plaintiff in not promptly demanding repayment of the money on discovery of the true state of facts, but for which the defendant's change of position might not have occurred? In *Durrant* v. *Ecclesiastical Commissioners*, L. R. 6 Q. B. Div. 234, it was held that a plaintiff who had paid by mistake a tithe rent charge for lands not in his occupation could recover the amount from the defendants, though at the time when he discovered his mistake, the remedy of the defendants against the lands actually chargeable had become barred. Again, in *The Kingston Bank* v. *Eltinge*, 40 N. Y. 391, the sheriff, having received an execution issued on a judgment in favor of the defendant, and afterwards one on a subsequent judgment in

favor of the plaintiff against the same defendant, and before the last had run out, but after the sixty days had expired as to the first, made a levy on personal property not sufficient to satisfy both, sold it and paid over the proceeds to the defendant in satisfaction of his execution with the assent of the plaintiff, neither party knowing that the execution had run out before the levy, but supposing the contrary ; it was held that the plaintiff could recover the money as paid under a mistake of fact, though the defendant's judgment had been in consequence of the receipt of the money cancelled and discharged of record. And see *Standish* v. *Ross*, 3 Exch. Rep. 527 ; *Rheel* v. *Hicks*, 25 N. Y. 289 ; *The National Bank of Commerce in New York* v. *The National Mechanics Banking Association of New York*, 55 N. Y. 211. In the case at bar neither the plaintiff nor executor learned the true state of the facts till the plaintiff was called on by the attorney for the residuary legatees to pay to them the amount of the legacy which the plaintiff had already paid to the defendant. The precise date when this demand on the plaintiff was made does not appear. The plaintiff testifies that it was two months or more after he had made the check and placed it in the hands of the executor for delivery. It is not claimed, however, that the demand on the plaintiff by the attorney of the residuary legatees was before the defendant had distributed the money and, consequently, no negligence or *laches* on the part of the plaintiff after discovering the facts could have had any effect in causing the defendant to change his position by the payment of the money ; and, if not, it is difficult to see how there can be any equity in his favor to prevent the plaintiff's recovery.

The defendant contends that the check, having been made payable to Catherine C. Flagg, was illegally paid by the bank on the defendant's endorsement, and, therefore, that the bank could not charge the payment to the plaintiff's account ; that the payment is to be regarded as a payment from the money of the bank, and not from the plaintiff's, and, hence, that the plaintiff's remedy is against the bank, rather than the defendant. While it is perhaps true that the check was

illegally paid by the bank and that the plaintiff, if he had seen fit, could have proceeded against it, we do not think that he was compelled to do so, but that it was competent for him to ratify or adopt the payment and to proceed against the defendant.

*Plaintiff's petition for a new trial granted.*

*Elisha C. Mowry & Livingston Scott*, for plaintiff.

*Joseph C. Ely & Herbert Almy*, for defendant.