Howry, J.,
delivered the opinion of the court:
Pedro de Napoles was, in 1890, a registered distiller in the fourth collection district of California. Herman Shwarz, the claimant, was one of the sureties on this distiller’s bond in the penal sum of $8,600, the condition of which was that if said Napoles should in all respects faithfully comply with all the provisions of law and regulations in relation to the duties and business of distillers of brandies from apples, peaches, or grapes exclusively, and should pay all penalties incurred or fines imposed on him for a violation of any of the said provisions, then the obligation should be void, but otherwise it should remain in full force.
An assessment was made against the distiller, but to a certain amount there was a subsequent abatement. The remainder of the assessment was paid by the claimant as the surety on the bond, and this amount has never been repaid to him. In December, 1893, Pedro de Napoles filed a claim in the proper office for the refundment of the amount paid, and upon evidence satisfactory to the Commissioner of Internal Revenue that the portion of the amount paid by his surety was erroneously assessed, the amount claimed was allowed. A warrant on the Treasury was accordingly issued in favor of the distiller, but sent to the care of his surety at Napa, Cal., in pursuance of a request to that effect made by Napoles in his application. But the removal of that person before the allowance of the claim in 1894 to parts unknown, apparently in the interior of Africa, remote from all reach of postal facilities, prevented anything from being done toward the collection of the warrant. Shwarz, who had come into its possession, returned the same to the Commissioner of Internal Revenue with affidavits showing that as surety upon the bond of Napoles he (Shwarz) had paid the amount; that Napoles had never refunded any part of the sum to him, and that he (Shwarz) was entitled to the money. The Commissioner of Internal Revenue acted favorably upon the application of Shwarz to cancel the old warrant, and thereupon issued a new *307 one in bis favor, but tbe Comptroller of the Treasury decided that when internal-revenue taxes illegally or erroneously assessed against a distiller are refunded, payment must be made to the principal against whom the assessment was levied and not to a surety on the bond, although the latter may in fact have paid the assessment in behalf of his principal. Refusing to revise the account, the claim is still unpaid.
The question presented by the findings is whether a surety on a distiller’s bond who has paid an assessment made against his principal is entitled to repayment when the assessment is discovered to be erroneous and the claim for a refundment thereof is allowed. For the claimant it is contended that the refunding must necessarily be made to the principal or the surety, and as the principal in this case has removed to parts unknown, it is impossible for .the surety to obtain the refund unless the payment is made directly to him. For the defendants it is urged (on the authority of the decision of the Comptroller of the Treasury denying the refund to the surety) that (1) the principal did not state specifically that the surety had paid the assessment, or is entitled to receive the amount to be refunded, because the proof furnished by the surety on that point is insufficient to justify the payment to him, and (2) admitting that the surety had paid the assessment and had not been reimbursed by his principal, yet the principal being primarily responsible and the obligation of the surety collateral, the question is one for private settlement between the parties, and not one for the determination of the Department, because the Government is not in a position to adjudicate questions arising between principals and sureties. The argument further proceeds upon the statement of the Comptroller that—
“ The dealings of the Government should only be with the principals and not with the sureties, and payments made by either the principal or the sureties on his behalf should be treated as made by the principal, who was legally bound to make such payment. The danger' of treating the surety as a principal having a claim against the Government for the refundment of taxes eironeously assessed against his principal is clearly shown in the present case; for, although the payment was made by the surety and is now claimed by him as *308 of right, and the Commissioner of Internal Revenue would allow it to him, he (the Commissioner) had already, upon a claim presented by the principal for the same refundment as if the money had been paid by him, authorized the amount to be refunded to him, and the account had been settled by the Auditor, and a draft issued in favor of Napoles, the principal. No stronger reason could be presented for a strict adherence to the rule of treating only with the principal than the facts presented in the present case; for, if the contention of the Commissioner of Internal Revenue is correct, that the repayment can be made to the surety, it would follow that if payment had in fact been made to the principal an erroneous payment would have been made, and the surety would still have had his claim against the Government.” (1 Comp. Dec., 258.)
With authority for the use of the name of the principal as nominal plaintiff all difficulty in the prosecution of this action for the use of the real party in interest might seem to disappear. But without that authority and the inability of the surety in the absence of the principal to obtain payment of such warrant on the Treasury as might issue unless indorsed by the principal, the question must be determined on the record as it stands.
The action of the Commissioner of Internal Revenue in canceling the warrant first given to the principal and directing a new warrant to be issued to the surety may be sufficient in itself to entitle the claimant to recover. But without considering the extent of the jurisdiction of the Commissioner and the effect of his award it is certain that with knowledge bjr the Government that it had received the money from the surety, his right to recover for money had and received as upon an implied obligation to refund would have arisen when it was discovered that an erroneous assessment had been made and collected. But the payment being in the name of the principal and the Government claiming that it was uncertain that the payment was with money paid directly by or derived from the surety, or, at least, that the account in some way remained open between principal and surety, how does the case stand?
The decision adverse to refunding the money to the claimant proceeds on two grounds, (1) that there is no privity *309 between the Government and the surety on a bond, and (2) danger in dealing with any person other than the principal in making the payment.
As to the want of privity between the Government and a surety on a bond, this court has held in two cases, both of which went to the Supreme Court, that a surety for the performance of any obligation to the United States stands in direct contract relation with the United States, and, as he is liable to be sued by the United States upon any default by his principal, so, on the other hand, has. he a right to sue the United States wherever' a balance is due from the Government to which he is, upon the equitable principle of subrogation, ultimately entitled.
In Behan v. United States (18 C. Cls. R., 687; 110 U. S. R., 338) a contractor failed to perform the work satisfactorily and his contract was annulled. The claimant, a surety on the contract, was permitted to go to work in his place, and was held entitled to recover in his own name his actual expenditures and unavoidable losses.
In Hitchcock v. United States (27 C. Cls. R., 185; 164 U. S. R., 227) the contractor failed to proceed satisfactorily with the performance. The contract, however, was not formally annulled, but upon a threat made by the Government to annul it, the surety took charge of the work with the knowledge of the Government, and completed it in the name of the contractor, all checks being issued in the name of the contractor and by him as fast as issued indorsed over to the surety. The suit was by the surety for the recovery of the retained 10 per cent both on his own work and that performed by the contractor before the default. It was held that ho was entitled to recover the entire fund.
The converse of the present case is presented by that of Pope v. United States (14 C. Cls. R., 446). In that case a collector of internal revenue became a defaulter. The sureties on his bond, upon demand by the. Treasury, made good the amount of the defalcation as then ascertained. It was subsequently found, however, that the collector was entitled to a credit not theretofore allowed, and the Government paid this amount back to the sureties. The collector thereupon brought suit in this court for the amount of the credit so allowed him. It was held that the money had been properly *310 paid by tho Government to the sureties to reimburse them for tho payment which they had made forjhis benefit.
In Phetteplace v. Bucklin (27 Atl. Rep., 211) the supreme court of Rhode Island held that the surety of an executor, who had become liable to legatees because of a misappropriation by the executor of funds of an estate, and who had drawn his check in favor of a legatee who had died without issue before the testator, but of which fact both plaintiff and the executor were ignorant, and the executor in whose hands the surety had put the check for delivery to the legatee (delivering it to defendant as the personal representative of the deceased legatee) could recover the amount of such check as money paid under a mistake of fact, though it had been distributed by defendant among those entitled to the estate of the deceased legatee, unless defendant could show that it would be inequitable to allow such recovery.
Tho agreed statement of facts eliminates the first objection raised by the Comptroller, that it did not sufficiently appear that tho surety had actually paid the money. The findings based on the agreement establish payment, not by the principal, but by the surety. The right of the Government to demand payment from the surety was just as strong as it was against the principal, and as great to obtain the payment without suit as it would have been had the surety actually been sued. If the surety choose to pay without waiting to be sued, his right to have the assessment refunded directly to him was as good as was the right of the principal to be reimbursed if the payment had been made by the latter. Assumpsit will lie whenever the defendant has received money which is the property of the plaintiff and which the defendant is obliged by natural justice and equity to refund. Bayne et al., trustees, v. United States, 93 U. S., 642; United States v. State Bank, 96 U. S., 35.
Inasmuch as the findings establish that, upon the application of the principal for the refund, a warrant was issued in his favor, but sent to the care of the surety in pursuance to a request to that effect made by the principal in his application, the presumption does not arise that the principal thereby intended to claim any part of the amount refunded.
We are unable, then, to see any danger to the public interests in holding that a surety can recover under the facts *311 disclosed. The amount of the erroneous assessment now in the Treasury does not belong to the United States, but to the person who paid it under the mistake of the officers of the Government, and to the surety in whose actual possession tiie principal directed the Treasury .to place the evidence of debt when application was made for the refunding of the money. The defendants have every reasonable protection on these facts from a further demand of the principal to have the same paid to him.
Treating the defendants’ demurrer as waived and the case tried upon the agreed statement of facts embodied in the findings, judgment will be entered for the amount shown to have been paid by the surety. '