Barney, J.,
delivered the opinion of the court:
This suit grows out of a contract for the construction of earthwork along 9 miles of the feeder of the Illinois & Mississippi Canal under the Engineering Department of the Army. A copy of this contract and the specifications thereto belonging, together with a copy of a paper giving information to bidders, entitled “Available quantities of material for embankment,” are attached to the petition and made a part- thereof.
This “ earthwork,” according to the terms of the contract, called for excavation in some places and the building of embankments in others; while the price for this work varied on the different miles, in each instance the same price was paid both for excavation and for earth placed in the embankment.
*180 Earth required to be excavated was disposed of in one of two ways: (1) It was placed in the embankments required by the plans to be constructed, or (2) it was “ wasted ”; that is, disposed of in some way not connected with the general plan of the work. If it was used in the required embankments, it was twice paid for, once as an excavation and once as an embankment. Earth required to be placed in embankment was obtained in one of three ways: (1) From excavations required within the limits of the canal prism; (2) from “ borrrow pits ” dug on the right of way belonging to the Government outside of the canal prism; (8) from “borrow pits” outside the right of way dug on land which the claimant was under the necessity of purchasing for that purpose. The largest part of the plaintiff’s claim grows out of the last-mentioned manner of obtaining earth for such embankment, and its determination depends largely upon the construction of the contract relating to that feature of the work.
In the advertisements for proposals to do this work bidders were notified to apply to Asst. Engineer L. L. Wheeler for information relating to the same, and the findings show that up'on such application by the plaintiff before making its bid he handed them the paper above referred to, entitled “Available quantities of material for • embankment.” The findings show': (1) That the available quantities of material for embankment were not as great in quantity as represented in this paper, and (2) that the engineer officer in charge of the work refused to allow the plaintiff to use much of the material therein represented to be available, in consequence of which the plaintiff was compelled to purchase more land outside of the right of way from which to “ borrow ” such material than otherwise would have been necessary.
I. It is contended by the plaintiff that by thus furnishing it with this statement of “Available quantities of material for embankment ” the Government thereby warranted that the quantities therein mentioned would be available for such use and would be allowed to be used for that purpose. It is unnecessary to quote authorities to the general rule that when false representations are made as to the subject matter *181 of a contract, or as to any material matter concerning the same, such representations ordinarily amount to a warranty (Norrington v. Wright, 115 U. S., 203); or, as has been said: “ No doubt by a representation a party may bind himself just as much as by an express covenant.” (Smith v. Richards, 3 Pet., 26, 36.) If the representations contained in the paper above referred to had been made a part of the written contract, and had not been modified by any other provision contained therein, there might be room for the application of the rule of law above referred to, a question, however, which it is unnecessary to decide in this case. The paper containing the statement of “Available quantities of material for embankment” was given to the plaintiff as information to form a basis upon which to make its bid, and after this was done the contract was entered into with specifications attached which were made a part of the same. This is the contract we are authorized to construe and no other.
The rule that all prior negotiations are merged in the written contract, and that such contract is presumed in law to express the final understanding of the parties, and that prior transactions can only be referred to for the purpose of explaining and construing uncertain terms of the contract, is elementary. (Brawley v. United States, 96 U. S., 168, 173; Simpson v. United States, 172 U. S., 372, 379; Griefen v. United States, 43 C. Cls., 107, 113.)
Without reviewing the cases cited by the plaintiff upon this subject, it is sufficient to say that in all of them prior transactions were referred to only for the purpose of explaining and construing the language of the contract as afterwards executed, and the contract as thus explained and construed was enforced. In the case at bar it is sought by the plaintiff to refer to information given it prior to the execution of the contract for the purpose of adding conditions not contained in the instrument itself.
We find nothing in the contract or specifications in this case making any representation whatever as to the materials available for embankments, much less any statement which can be regarded as a warranty regarding the same. On the contrary, the plaintiff was therein told in the most *182 positive manner to make its own investigations relating to all the circumstances regarding the work to be done, as the following extracts from the specifications show :
“ 3. Maps of the localities may be seen at this office. Bidders or their authorized agents are expected to visit the place and to make their own estimates of the facilities and difficulties attending the execution of the work, including the uncertainty of weather and all other contingencies.
“ 38. It is understood and agreed that the quantities given are approximate only, and it must be understood that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. Bidders are expected to examine the drawings and are invited to make the estimate of quantities for themselves.
“ 38. The material throughout the canal is believed to be loam, clay, sand, and gravel, but bidders must satisfy themselves as to the nature of the material to be encountered.
“ 84. Bidders are notified that under these specifications suitable material in sufficient amounts for the canal embankments on several of the miles can not probably be procured on the canal right of way but must necessarily be purchased. In other cases, if procured on the right of way, long hauls will be necessary. All persons bidding shouid first visi t and carefully consider local conditions, character, quality, and amount of materials available, and the facilities for the work.
“ Proposals are not desired from parties who do not properly inform themselves nor from those not prepared for a rigid compliance with all of the conditions of any contracts that may be awarded them under these specifications.”
It will thus be seen that even if we consider the information given as to the available material suitable for embankments to be a part of the contract, the plaintiff was clearly advised not to regard such information as a warranty.
It should also be remarked that the findings show that in the bid submitted for the work the plaintiff made the following statement:
“We make this proposal with a full knowledge of the work to be done, and have fully informed ourselves of the character of the material that will be encountered and of the circumstances surrounding it.”
The case of Simpson v. United States (31 C. Cls., 217; 176 U. S., 372) involved the construction of a contract similar to the one now under consideration, and fully sustains *183 the decision in this case. Reference is also made to the following cases as sustaining this opinion: Lewman v. United States (41 C. Cls., 470); Griefen v. United States (43 C. Cls., 107).
The plaintiff relies much upon the decision of this court and the Supreme Court in the case of Utah, Nevada & California Stage Co. v. United States (39 C. Cls., 420, and 199 U. S., 414). The facts, however, in that case were radically different from those in the case at bar. That was a suit upon a contract for mail service to the city of New York, and the advertisement for the same contained information to bidders and was made a part of the contract. This advertisement represented, among other things, that there were two stations on an elevated railroad which were each served by 62 trips when, in fact, there were double that number of stations and the business required double the alleged number of trips; and this advertisement referred bidders to the postmaster “ for information relative to the service and its requirements.”
This court held that the representation made by the department as to elevated railroad stations and necessary trips to be made was in the nature of a warranty. It will be seen, however, that the contract itself in that case stated the number of stations to be served and the number of trips to be made, and it would have been absurd to require the contractors to have sought further information upon a matter of so positive statement and so peculiarly within the knowledge of the Government. There was no room for conjecture or speculation upon this subject. Nott, Ch. J., speaking for this court, in the opinion in that case, said:
“ True it is that the advertisement declared that the bidders must inform themselves, and that no additional compensation would be allowed for mistakes, and that they must seek the postmaster for explanations. But here was an instance where the bidder might inform himself by reading with care the statement which the department placed in his hands; and it was not a case which required the bidder to seek the postmaster for explanations, for nothing could be plainer than that which was stated; and it was not a caso of mistake, for the matter was understood precisely as it was written.”
*184 In the case at bar, as before stated, the information as to available materials was no part of the contract, and even if it had been was necessarily a matter largely of 'conjecture and was a subject about which the plaintiff had equal means of investigation with the Government and was repeatedly and in unmistakable terms told to do so in the specifications attached to the contract.
The Utah Stage Co. ease is clearly distinguishable from the Simpson case and from this case, and we see no conflict between them.
Evidence was submitted by the claimant tending to show that the Government officers in charge of the work rejected material suitable for use in the embankment of the canal. As it is not even contended that this was any fraúd or such gross error on the part of such officers in their rulings in that regard as to imply bad faith, that evidence has not been considered, and no. finding is made upon the subject. It is unnecessary to cite authorities to the rule that under such a state of facts the decision of such officers is not subject to revision by the courts.
II. This view of the court upon the law in the case disposes of the claim for alleged deficiency of available material for embankments and brings us to the claim for extra excavation and refilling made necessary by the “ soiling ” or “ sodding ” provided for in the contract and for which no payment has been made. It is contended by the Government that this .item was only incidental to the completion of the work and was not to be estimated and paid for independently. In other words, that payment for the balance of the work included this as an incident like the digging of ditches, etc., which were provided for in the contract.
An examination of the contract and specifications will show that it provided for “ earthwork ” only, and which included both “ excavation ” and “ embankment.” The provisions of the contract which are believed to be controlling in the question are as follows:
“ 40. No excavations for borrowing material * * * nor * * * soiling, sowing seed, or sodding, or other work necessary for the construction of the canal and embankments, as specified herein, will be estimated or paid for separately.
*185 “The prices bid for ‘earthwork* shall include all work of every character necessary to deliver to the United States the complete and finished construction, with the shrinkage requirement added to the canal embankment.
“ 50. All slopes of the work, whether of embankments or cuts, also the tops and crowns of embankments (when not used as highways) shall be covered with black soil or suitable soil to sustain vegetation, to a thickness of 4 inches, upon which will be sown suitable grass seed, or, if preferred, living sods or turf 4 inches thick, properly placed in contact, will be accepted in lieu of the soiling and seeding. The black soil will be placed as the work progresses and will be included as part of it.
“ 65. The price named in the proposals per cubic yard for earthwork shall be understood to mean per cubic yard for the net earthwork above or below the surface of the ground as this surface existed before the work began.”
The plans provided for a uniform width at the bottom of the canal, except at special points, of 50.4 feet, and the findings show that stakes were set at this distance. The excavation for the canal was made 8 inches wider than the stakes were set to make room for the 4 inches of soiling and sodding on each side so that the canal should be of the dimensions called for in- the contract when completed. This extra 4 inches on each side was later covered by the plaintiff with black soil to the depth of 4 inches and seeded as provided for in the contract.
We believe that under the terms of the specifications above quoted the plaintiff is entitled to receive pay for this work as “earthwork” the same as any other excavation or filling done under the contract. Paragraph 40 provides:
“ The prices bid for ‘ earthwork ’ shall include all work of every character necessary to deliver to the United States the complete and finished construction, etc.”
Paragraph 50, after providing for the covering of the embankment with black soil, says:
“The black soil will be placed as the work'progresses, and will be included, as part of it?
Paragraph 65 above quoted also clearly indicates that such work is to be paid for as “ earthwork.” It is true that the latter paragraph provides that no claim shall be made for “ soiling, seeding,” etc., but this claim is not made *186 for “soiling” as such, but for excavation and embankment to which the soiling was incidental. There can be no doubt that the procuring of this black soil suitable to grow grass seed was much more expensive than the ordinary earth used as embankment, and for such extra expense the plaintiff was not to be paid; but this 4 inches was included as part of the embankment (see par. 50) and was a part of the net earthwork above the surface of the ground (see par. 65).
It is a familiar rule that in the construction of a contract all of its provisions must be construed together and made to harmonize if that can be reasonably dene.
We think a fair construction of the contract and specifications in this case demands that the plaintiff should be paid for the excavation and filling required to be made by the placing of 4 inches of black soil on the embankment at the price provided for “earthwork.”
Judgment is therefore ordered for the plaintiff in the sum of $2,012.34.