Littleton, Judge,
delivered the opinion:
In this case the plaintiff seeks to repudiate the provisions of the contract and sues for recovery as upon a quantum meruit for the value of the work performed and asks judgment for $304,547.59, computed as follows:
Money expended by plaintiff in tbe completion of the project_$403, 005.98
Reasonable cost of work performed by ITuqua & Gonzales prior to assignment of the contract to plaintiff- 45,-493. 00
Overhead expense and contractor’s profit- 32, 000. 00
Reasonable value of use of machinery and equipment- 40,000.00
Total_ 520, 498. 98
Less amount paid to contractor and plaintiff_ 215,951.39
Balance_ 304,547.59
Fuqua & Gonzales, general contractors, after receiving notice of the call for bids for the construction of a road described in the findings, sent a member of the firm to investigate the site of the work, the nature and the extent thereof. After a very cursory examination of the site and upon being furnished a bidding sheet by the district engineer’s office, upon which was shown certain figures as to the approximate amount of rock and common to be excavated, and with the contract form, maps, plans, specifications, and estimates of *63 quantities of material shown on the plan and cross sections prepared by the Government engineers, the firm submitted a written proposal to perform the work at the price of 45 cents a cubic yard for common and $1.80 a cubic yard for rock excavation, and also submitted an alternative proposal to perform the work at the price of $1.01 a cubic yard for, all excavation regardless of classification. The alternative bid was accepted by the Government; the formal contract and surety bond were executed, and the contractor commenced work. After about five months the contractor was informed by the district engineer that if greater progress in the work should not be made, it would be necessary to annul the contract. This advice was also forwarded to the plaintiff company, surety on the contractor’s bond. The firm of Fuqua & Gonzales had not completed any portion of the road and the work which was performed consisted only of the excavation of common material.
The plaintiff surety company, after receiving an assignment of the contract from Fuqua & Gonzales, took over the contractor’s equipment, added thereto certain new equipment, and entered upon completion of the contract. It subsequently completed the work which was accepted by the Government, and payment in full at the prices specified in the contract was made with the exception of the last voucher for $25,707.15 tendered by the Government but refused by the plaintiff.
Plaintiff’s contentions are (1) misrepresentation by the Government in the figure submitted on the bidding sheet which disclosed a lesser amount of rock excavation than was actually disclosed by the Government engineer’s investigation and estimates, such discrepancy being such as to entitle the contractor and plaintiff to rescind the contract upon learning the facts and to recover the reasonable value of the cost of the work, whether the misrepresentation was innocent or otherwise; (2) that a resurvey of the road after the contract had been executed, of which no notice was given to the contractor or plaintiff, was made by the defendant’s engineer by which a material change was made in the line of the road which entitled plaintiff to rescind the contract *64 upon discovery of the facts; and (3) tbat failure of the district engineer to disclose to plaintiff and inform it of certain facts at the time it took over the contract, i. e., the alleged misrepresentations contained in the bidding sheet in respect to the respective amounts of rock and common, the material change in the location of the road, and the great increase in the amount of rock and decrease in the amount of common to be removed in the new location as compared to the old, entitled plaintiff upon discovery thereof to rescind the contract.
It appears that there was a discrepancy in the figures contained in the bidding sheet submitted to the contractor as to the approximate number of cubic yards of rock and common to be excavated as compared to the total of the approximate estimates shown on the plan and cross sections prepared by the defendant’s engineer; but the estimates and figures arrived at by the investigation of the engineers were only approximate and were not intended to be final. The instructions to bidders contained the statements that “ bidders are cautioned that the estimate of quantities attached hereto will serve, so far as .this project is concerned, only for the purpose of comparing bids. * * * Bidders are required before submitting bids to examine carefully the site of the proposed work * * *. Professions of ignorance regarding the requirements for the work will in no way serve to modify the provisions of the contract.” Having been thus put upon notice the contractor made only a very casual inspection of the site at both ends thereof without attempting to examine the character of the material to be excavated. While the route of the road was over a rugged country, it could be traversed and the contractor could have made a much closer examination.- The contractor in submitting its bid certified therein that it had carefully examined the plans, specifications, and form of contract, and also “personally examined the site of the work,” and that it understood that the “ quantities mentioned below are approximate only and are subject either to increase or decrease and hereby proposes to perform all kinds of work, either decreased or increased, in accordance with the provisions of the specifications at the unit prices bid.”
*65 ' The ’ bid accepted by the Government was .at a specified amount per cubic yard for all excavation without classification. The basis of the plaintiff’s claim, therefore, is not for' additional sums because of erroneous classification, but by reason of the unclassified bid of $1.01 a cubic yard the contractor and plaintiff were put to greater expense in excavating more rock than the approximate estimate shown on the bidding sheet led them to believe would be encountered. ' Had the plaintiff believed that it was being compelled to do work not contemplated by the contract which would greatly increase its cost, it had the choice of abandoning the work and suing for damages, or of proceeding under the contract at the contract price. It elected the latter course and accepted without protest from time to time all monies due, except that it refused to receive the final voucher.
Upon the facts in this case we are of opinion that plaintiff may not repudiate the provisions of the contract and sue for recovery as upon a quantum merwit for the value of the work performed. Monad Engineering Company v. United States, 53 C. Cls. 179. A review of the leading cases demonstrates that the courts are generally agreed on the question as to the nature of a representation amounting to a warranty.
In the cases where the plaintiff has prevailed, the alleged misrepresentations involved the quality of material rather than the approximate quantity. In Burgwyn v. United States, 34 C. Cls. 348, the specifications carried a provision similar to the one involved in the present case, and in that case plaintiff contended that there was a warranty of certain quantities. The court said “As it was equally open to the claimant to know of the errors before he made his bid, if indeed the errors were not apparent on the face of the specifications, he must be presumed to have had knowledge thereof. Hence the Government can not, in the absence of an express or an unavoidable implied provision therefor in the contract, be held to have guaranteed that the erroneous quantities stated- were correct.” Griefen v. United States, 43 C. Cls. 107; Callahan Construction Co. v. United States, *66 47 C. Cls. 177. Having of the quantities presented in the instructions to bidders were approximate only and that the “ basis of the payment on the contract will be the actual quantities of work performed and if the actual quantities should show either increase or decrease from the quantities given in the estimated prices, the unit prices mentioned in the proposal will still prevail,” plaintiff, after having made a very casual examination of the site, certified in its bid that it had personally examined the plans, specifications, and form of contract, and had personally examined the site, and agreed to accept as full compensation the amount of the actual quantities excavated. In this bid it had certified that it understood that the quantities were approximate only. Having had sufficient opportunity to inform itself, it then proceeded to sign the contract, which contract provided that
“ The contractor further agrees that he is fully informed regarding all the conditions affecting the work to be done, * * * and that his information was secured by personal investigation and research and not from the estimates of the engineer.”
In Lovell v. United States, 61 C. Cls. 756, this court stated that
“ It is idle to contend that the representations of the blue prints admit of no variation as to quantity, and the defendant be held to a degree of exactness which common experience has long since established as impossible of attainment in this class of work. The plaintiff contented himself with reliance upon the blue prints; he did not take the trouble in an enterprise of this importance to visit the site, as he was invited to do, and discover for himself the difficulties attending the undertaking. Having neglected this important step, we are now asked to hold the defendant responsible on the theory of a misrepresentation, alleged to be established by proving that it must have been erroneous because more rock was encountered than could have been within the area shown upon the blue prints.”
It is difficult to see how the Government in this case could have applied more apt or explicit language to indicate that the figures presented were mere approximations and were not to be relied upon by the plaintiff. Opportunity was granted the contractor to investigate and determine what *67 expect to encounter in the course of the work. The reliance of the plaintiff is wholly based upon the fact that in the figures submitted in the bidding sheet the amount of rock was stated at 102,520 cubic yards, whereas in the plan and cross sections which were furnished the contractor, and from which the bidding sheet was prepared, the amount of rock was shown at 119,316 cubic yards, or a difference of approximately 10 per cent in excess of the total estimate stated in the bidding sheet. A reasonable explanation of the error in the bidding sheet is that in totaling the estimates shown for each of the six hundred stations on the line of the road, there was an incorrect computation. The plaintiff, however, was fully warned, and any reliance placed by it on the figures shown on the bidding sheet did not entitle it to rescind the contract. The naming of approximate quantities can not be regarded in the nature of a warranty, but merely as an estimate of the probable amount, in reference to which good faith only can be required of the party making it. Lipshitz & Cohen v. United States, 269 U. S. 90.
A resurvey of the line of the road was made after the execution of the contract and without advice to the contractor, in which survey there were certain changes in the line of the road and another estimate was made of the material to be removed which indicated 121,306 cubic yards of rock instead of the amount originally stated. The original survey was only preliminary and was not intended to be final. The resurvey was for the Government’s own information. The resurvey did not invalidate the contract. It changed the line of road in two particulars; one for a distance of 2,196 feet, where the maximum change of location was 180 feet, and the other for a distance of 11,818 feet, where the maximum change from the original survey was 330 feet. This survey was for the purpose of reducing the percentage of grade of the road and also to eliminate a number of curves. Plaintiff has failed to show the additional cost incurred by reason of these changes. This was a unit-price contract. Plaintiff bases its claim upon the cost of the work, plus overhead and profit, less the amount received from the Government. There can be no recovery on this basis for extra cost *68 by reason of changes in the work in the absence of proof of the excess cost.
Finally the plaintiff contends that the failure of the Government to disclose to it or state the classifications of the materials and the changes in the line of the road misled it and that had these facts been known it would not have undertaken the assignment of the contract and would have rescinded the whole transaction. In taking over the contract plaintiff placed itself in the position of assignor and took over the contract subject to all equities existing between the assignor and the Government. We have held that there was no misrepresentation practiced on the contractor and therefore none attached when the assignment was executed. By that instrument the assigneee assumed each and every obligation imposed by the contract. The assignee can assert no greater rights than the assignor.
Further than this it would seem that common prudence would have required an investigation of the then existing contract to determine the surety company’s actual obligations in the premises. There is no showing that the Government refused to furnish information, nor that incorrect information was furnished. There was no duty resting upon the defendant voluntarily to come forward and supply the plaintiff with all the existing facts for its guidance. The contract and specifications expressed the rights of the parties. A surety on a contract with the United States is in contractual relations with the United States from the time of execution of the bond. Reese v. United States, 9 Wall. 13; Shwarz v. United States, 35 C. Cls. 303.
The contract in this case also provided that “ He [the contractor] will make no claim against the United States by reason of estimates, tests, or representations of any officer or agent of the United States.” This provision is as valid and binding as any other part of the contract and, having been voluntarily entered into, the plaintiff is precluded from maintaining suit to recover on account of errors in the estimates as to the quantities of material. Merchants' Loan & Trust Co. v. United States, 40 C. Cls. 117. In Wells Brothers Co. v. United States, 254 U. S. 83, the court stated in reference to a provision in the contract wherein plaintiff *69 agreed not to make claim for delay caused by the United States, that “ Such language * * * can not be treated as meaningless and futile and read out of the contract. Given its plain meaning it is fatal to the appellant’s claim.”
.Judgment will be entered in favor of the plaintiff for $25,707.16, admitted by the defendant to be the final payment due plaintiff under the contract, payment of which was tendered and refused. It is so ordered.
Williams, Judge; GREEN, Judge; and Booth, Chief Justice, concur. •
Whaley, Judge-, took no part in the decision of this case.