AteiNSON, J.,
delivered the opinion of the court:
Plaintiff sues to recover the sum of $18,138.11, based upon various allegations in the petition that the defendants caused delays, extra woi*k not embraced in the contract, and that the liquidated damages set out in the supplemental contract were accepted by the plaintiff because of threats and coercion on the part of the agents of the Government.
The findings show that, on the 12th day of April, 1905, plaintiff entered into a contract with the War Department, agreeing to construct at the United States powder depot, near Dover, N. J., the following buildings and within the following periods of time:
One wheel and dynamo house, to be completed within 90 working days from the 12th day of April, 1905, for the sum of $4,500.
One storehouse for nitrate of soda, for the sum of $9,000.
Five storehouses for reserve supply of war materials, for the sum of $59,550.
Three storehouses for reserve supply of war materials, for the sum of $36,000.
These several buildings were to be constructed in accordance with the plans and specifications which had been duly published. One of the buildings was to be completed within 90 working days, two of the five within 90 working days, three within 180 working days, and the remaining three within 180 working days after the date of the contract. Also one powder house was to be completed within 150 working days, for which $27,500 was to be paid, and one magazine for high explosives, for the sum of $17,500. to be completed within 90 working days.
The contract and supplemental contract are filed as exhibits to plaintiff’s petition.
The original contract was entered into between the plaintiff company and the United States on the 12th day of April, 1905, as before stated, which provided for the erection of these 12 buildings for governmental purposes on the Pic *210 catinny Reservation, 5 miles from Dover, N. J. These structures were to be one story in height with no cellars, and the only excavations necessary were for proper foundations, for preparing sites for the buildings, and for grading a given area around each building.
Five of the buildings were to be completed on July 28, 1905, one on October 9, 1905, and six on November 13, 1905.
The plans of the buildings did not show the exact amount of excavation necessary. The ground, however, was comparatively level, and the buildings were to be widely separated.
It appears that in the preparation of the specifications the subject of excavation was discussed by the commanding officer, Col. O. B. Mitcham, and George E. Jenkins, the Government engineer in charge, and it was agreed by them to require the respective bidders to estimate the cost of this work, and the following requirements were accordingly incorporated in the specifications:
“ 3. The location and grade of the building shall be indicated by the commanding officer; the site shall be cleared by the contractor for the reception of the structure and for that purpose should be examined by Mm before bidding. The contractor must lay out his own work correctly and will be responsible for all lines, levels, and measurements.”
“ 25. Grade line. — The finished grade shall be as shown on plan. The surface, for a distance of 15 feet from the building, shall be graded on a fall of not less than one-half inch to the foot.”
“ 26. Excavation. — Excavate, as required by the site and drawings, for all the footings, piers, platforms, steps, downspout drains, etc., to the depths figured or shown, or to such depth as will provide absolute security against danger from frost or insecure foundations. This must be done irrespective of depth shown by drawings or figures and without extra charge. In no case is the depth to be less than 4 feet below the finished grade. Make the excavations 8 inches wider all round than the outside foundation, leaving same open till walls are well set and dry. * * * For removing rock found in ledges or bowlders in the excavations an extra sum per cubic yard will be paid, but no extra payment will be made excepting for rock exceeding 1 cubic yard in volume.”
*211 Plaintiff visited the sites of the buildings and went over the ground with the Government engineer in charge. The approximate sites of each building were pointed out to plaintiff, who necessarily observed the rolling or undulating character of the land. It is, however, not claimed by plaintiff that the ground at the sites shown him was flat and required no other excavation than the digging of trenches for foundations. The findings show that the ground upon which the buildings were to be constructed was rolling or undulating in character, but it does not appear that plaintiff was led to believe, as he avers, that he understood the grading, other than for trenches, would be done by the Government. It appears that he went to a near-by railroad cut to observe the character of material likely to be encountered in cutting down the hillocks to a general level in arranging the sites for the locations of the buildings. It further appears that plaintiff asked no questions about grading. He necessarily knew from the plans that a slight slope of not less than one-half inch to the foot was required for the distance of 15 feet from the wall of each of the buildings to be constructed. It seems unreasonable, therefore, that a skilled and experienced contracting firm would not have inquired who was to remove and pay for any high ground inside this level space of 15 feet around the buildings, if there was at the time any doubt in plaintiff company’s mind as to the matter of the expense of the gradings for* the sites of the different buildings embraced in the contract. Plaintiff would, of necessity, by the specifications, be required to clear the sites for the location of these several buildings, and it therefore seems reasonable to contend that a site would “ be cleared by the contractor for the reception of the structures ” if after he had excavated for a. practically flat space of 15 feet in width all around a building there should remain a mound in the center of the building site higher even than the floor of the structure he was required to build. Clearly plaintiff was required by the contract to prepare the sites of the buildings for their reception, and for 15 feet on all sides of all of them. If plaintiff failed to provide for this outlay in its estimates, it alone must bear the burden *212 of such, negligence. It does not appear that deception was practiced by the Government, nor is fraud shown by the testimony; consequently it was the duty of the contractor under the provisions of its contract to make all excavations necessary for the reception of the buildings on the sites designated by the Government’s engineer, and also to make such excavations and fills as were necessary to secure a grade approximating, as nearly as possible, the determined slope of not less than one-half inch per foot for 15 feet on all sides of each of the buildings.
Plaintiff’s counsel raises the question of the Government’s right to assess liquidated damages against it, and also alleges duress by the Government to compel it to accept the terms of a supplemental contract which was entered into between it and the United States.
In respect of the matter of the liquidated damages, it has been so definitely settled by this court and the Supreme Court, We do not deem it necessary to cite authorities, that where liquidated damages are provided in a contract, strict performance nan not be enforced, if it is shown that the party to the contract claiming such damages was himself responsible for the delay which prevented the completion of the work within the time limit required by the contract. In such a case the contractor must be allowed a reasonable time in which to complete his work, and the duration of such period must be determined by the surrounding circumstances and conditions. That is to say,' if a party to a contract who is entitled to the benefit of a condition, upon the performance of which his responsibility is to arise, dispenses with, or by any act of his own prevents performance, the opposite party is excused from requiring a strict compliance with the condition. Thus, if a specific time for performance is fixed and compliance therewith is prevented by the party who has a right to claim it, the law will not permit him to set up the nonperformance of the condition as a bar to the responsibility which his part of the contract has imposed upon him. (See United Engineering and Contracting Co. v. United States, 48 C. Cls. R., and the numerous cases thei’e cited.)
*213 In the original contract in the case at bar no provision was made for-damages of any kind, bnt the supplemental contract contains the following provisions:
“Akt. 2. That in consideration of the extensions of the times for the completion of the buildings enumerated in the preceding article, it is provided that in the event of the failure of the party of the first part to complete the various buildings by the times stipulated in the preceding article there shall be deducted from any payments, as liquidated damages, the following amounts for each of the buildings stated for each and every day of delay in the completion of these said buildings, and which deduction is not by way of penalty but to cover as nearly as practicable the value of the buildings to the United States as public utilities: For the wheel and dynamo house, one dollar and fifty cents ($1.50) per day; for each storehouse for nitrate of soda,, or for each storehouse for reserve supply of war material, four dollars ($4) per day; for the power house, to contain also carpenter, machine, blacksmith, and tin shops, nine dollars ($9) per day; for the magazine for high explosives, six dollars ($6) per day.
“ In addition all extra expenses of inspection of any building which has been delayed in its completion beyond the date determined by the preceding article, shall be charged against the party of the first part.
“Aet. 3. That all the provisions of the [original] contract of April 12, 1905, shall remain in full force except as modified by the terms of this supplemental contract.”
Section 8 of the original contract of April 12, 1905, which is made a part of the supplemental contract of August 31 of said year provides: “ It is further agreed that the commanding officer, United States Powder Depot, may make changes in the specifications forming part of this contract, and that if such changes involve extra labor or material a fair price will be paid therefor; but if such changes involve less labor or material a fair deduction will be made from the contract price * * and it further provides that if a controversy arises the matter shall be referred to the Secretary of War, whose decision shall be final.
It is shown by finding Y that no controversy arose between the contractor and the Government officers in charge of the work as to extras, etc.; that the sum of $1,756.25 was paid to the contractor for the alterations made and the delays caused *214 thereby, and the receipt for the same given by the contractor reads:
“Received at Philádelphia, Pa., this 5th day of October, 1906, from Lieut. Col. O. B. Mitcham, Ord. Dept., IT. S. A., the sum of $1,756.25, in full of the above account, which I certify to be correct.”
It appears that about 127 days’ delay, on the basis of the labor of one man, was caused by the Government in making the changes in the required extra work, but it is not shown how many men were employed by the contractor, in the execution of his contract, nor is it shown that in making such changes the general work on the contract as a whole was thereby obstructed or delayed.
It further appears that’ delays were caused by the failure to secure competent men to carry on the work, but it was not impeded by a general strike of the employees. Occasionally some of the men demanded higher wages and quit because their demands were not granted. Delays were caused by the failure of subcontractors to furnish materials and promptly comply with their agreements with the plaintiff company, but it is not established that the Government was the material cause of any of them, except those to which we have referred, and it is not shown by competent proof that they delayed the general plan of carrying on the work of the contract as a whole. Consequently the contention of plaintiff that the amount of $6,796.94 was wrongfully and illegally withheld as liquidated damages can not be sustained.
From the beginning of the work on these buildings contentions arose between the contractor and the representatives of the Government. The commanding officer (Col. O. B. Mitcham) called attention to the slowness of the work that foretold the probable failure of the contractor to finish its contract within the allotted time provided by its terms. The inspectors for the Government were constantly on their guard against faulty work, caused by the discovery of the substitution of mineral paints for the higher-grade paints required by the specifications, by the misfits of parts of the construction sublet by the plaintiff, by the finding of cork rivets inserted where iron rivets were to have been placed, by *215 attempts to use brummagem or patched stone after the stone had been condemned, and other unskilled and dishonest actions by plaintiff’s subcontractors.
As was anticipated by the Government’s agents, when the time drew near for the delivery of the buildings that were to have been completed in 90 working days, plaintiff admitted its inability to consummate the work within the time set out in the contract. On July 28,1905, the 90-day buildings were due to be finished. On July 21, 1905, the plaintiff asked an extension of time on this construction. According to a provision in the contract, the Government set out in a letter addressed to plaintiff, dated August 4, 1905, the conditions under which an extension of time would be granted. All of these terms were accepted by plaintiff without protest or reservation in a letter dated August 18, 1905. Accordingly a supplemental contract was prepared by the Ordnance Department of the United States and forwarded to plaintiff, who, upon receipt of it, wrote, under date of August 24,1905, that “ the articles of agreement which as amended are entirely agreeable to us, and which we will be pleased to.execute as soon as the contract reaches us.” On September 5, 1905, plaintiff executed the supplemental contract. The extension of time granted for completion of the five buildings under the supplemental contract aggregated 235 days.
It is claimed by plaintiff that threats and duress were used by the agents of the United States to compel it to accept the supplemental contract. We find it, on July 14, 1905, in a position where, according to its letter of that date, it admits its inability to finish the building, due July 28, 1905, before the latter part of September, 1905. Plaintiff then had 14 days to do a work that it admits it could not finish before the “ latter part of September,” or in about 60 days. Plaintiff thus saw its contract about to be voided and necessarily to be finished at its expense by other parties under the provisions of the same. It thereupon solicited an extension of time in which to complete the work. The terms upon which these extensions would be allowed by the Government were presented to plaintiff by the Ordnance Department. It readily accepted them. It offered no objections; made no complaint; *216 but in a spirit of appreciation wrote several letters to the Ordnance Department expressing its thanks for what it appreciated as a valuable consideration. At no time was there any protest by the plaintiff company; nowhere is a complaint shown. Nor does it appear that at any time duress or threats of any sort were shown, offered, or exerted by the officers of the United States. It is plainly apparent that the plaintiff company was unable to comply with the terms of its contract and, as shown by its own admissions, it was thankful for any opportunity to get the time extended to enable it to complete the work it had contracted to do. (See Finding II.)
In respect of the claim of plaintiff for excavating, grading, etc., of 5,900 cubic yards, amounting to $7,375, we can only say that the same was clearly required by the specifications hereinbefore set out.
Considering the whole case, we are of the opinion that the allegations of the petition are not sustained, and the same is accordingly dismissed.
Howet, J., took no part in the decision of this case.