Booth, Judge,
delivered the opinion of the court:
- The plaintiff on January 19, 1917, contracted to do certain construction work at the Rock Island Arsenal, Rock Island, Ill. The contract called for a concrete hollow-tile house, 350 feet of standard railroad, and one loading platform. The Government prior to soliciting bids for the work furnished blue prints and detail plans and specifications of what would be exacted in reference to the same, and the plaintiff had access to and examined the same. Among the blue prints furnished was a contour map. It disclosed the elevation of the dirt surface above a fixed point within the boundaries of the site selected for the location of the work. It did not within this area show the presence of *760 loose rocks upon the surface of the ground nor the elevation caused thereby. The plaintiff, without visiting the site, relied upon this contour map as an exact and precise representation of what amount of excavating he would have to do to render the site available for the construction work to be done. When he began work he found embedded in the ground a considerable quantity of rock varying in size and difficult to excavate and remove because the same had been long since dumped upon the ground and was coverecl by a growth of grass, weeds, and trees. The plaintiff now contends that he is entitled to extra compensation for removing this pile of rocks.
The contention is apparently based upon a misrepresentation and the cases of Hollerbach v. United States (233 U. S. 165) and Christie v. United States (237 .U. S. 234) are relied upon. The cases are inapposite. A contour map such as herein relied upon was designed to disclose no more than elevations of surface of the earth; it may not be construed into a warranty that every impediment to clearing the site for the performance of the work is clearly shown thereon. The plaintiff assumed the risk of encountering extraneous deposits which might exist above the surface of the ground. The specifications so warned him, for they provide as follows : “ The location and grade of the buildings shall be as indicated on the drawings. The site shall be cleared by the contractor for the reception of the structure and for that purpose should be examined by him before bidding.” The plaintiff having obligated himself to clear the site and been expressly warned to view the premises may not now complain that he came across difficulties which an observance of the specifications would have obviated and difficulties not unusual and to be anticipated. As well might he claim additional pay for removing trees and brush.
The next complaint centers around the blue prints furnished him as to the estimated quantities of rock excavation necessary to be made. The contention with respect to recovering for this item is identical with the preceding one. Two sets of blue prints disclosing in cross section the rock formation beneath the surface of the ground for foundation purposes were furnished the plaintiff. After the excavation *761 work had been completed the plaintiff discovered an alleged error as to the quantity of rock removed, which he ascribes to a misrepresentation in the blue prints. The claim is that in computing the amount of excavation to be done in accord with the blue prints furnished by the defendant it is found that the plaintiff was compelled, at a cost of $720, to remove 240 cubic yards of rock more than the blue prints disclosed as present. In other words, the blue prints were not precisely accurate as to quantities of rock present. The elevation of the rock surface was not correctly depicted by the blue prints, and being so a misrepresentation follows. The blue prints furnished the plaintiff on their face exhibit no words constituting a warranty that the quantities of rock to be excavated will in every particular conform exactly to a computation of the amount to be found by figuring the same upon the basis of the cross sections shown. It is idle to contend that the representations of the blue prints admit of no variation as to quantity, and the defendant be held to a degree of exactness which common experience has long since established as impossible of attainment in this class of work. The plaintiff contented himself with reliance upon the blue prints; he did not take the trouble in an enterprise of this importance to visit the site, as he was invited to do, and discover for himself the difficulties attending the undertaking. Having neglected this important step, we are now asked to hold the defendant responsible on the theory of a misrepresentation, alleged to be established by proving that it must have been erroneous because more rock was encountered than could have been within the area shown upon the blue prints. The contention is without merit. Simpson & Co. v. United States, 172 U. S. 372; Fonder Co. v. United States, 48 C. Cls. 198; see also paragraph 2 of specifications.
Specification 66 provides for roof construction. Specification 64 specified the quality of lumber to be used in woodwork. The plaintiff insists that he observed the specifications with reference to the quality of lumber in the construction of the roof, but that the same was rejected by the inspector as not in accord with the contract. Two insurmountable difficulties prevent a recovery for this item. First, the plain *762 tiff compromised the contention with the inspector and proceeded with th'e work according to their mutual agreement. Second, article 3 of the contract contained, among other things, this express provision: “ The decision of the inspecting officer as to the character of the work and the quality and quantity of the materials furnished shall be binding.” Plumley v. United States, 226 U. S. 545, 547; Crook v. United States, 270 U. S. 4; Wood v. United States, 258 U. S. 120.
The item embraced in Finding YII is concluded by what is said in disposing of the preceding item. The contract pointed out in express terms the precise manner of making changes in the contract work. The final paragraph of Article 10 recites: “No claim for addition or deduction on account of any change will be made unless the same was ordered in writing.” The plaintiff had an undoubted right to refuse to proceed with the work brought about by a change in the plans until he received the order in writing. We find no authority in the contract to waive'the provision. The plaintiff knew the provision was in the contract, and he was derelict in proceeding without the written order, and in greater fault in accepting what the defendant paid. Plum-ley v. United States, supra.
Finding VIII depicts a situation which clearly discloses the imposition upon the plaintiff of extra work and the furnishing of materials not required by the contract or specifications. The defendant, because of lack of available appropriations, was compelled to reduce the size of the concrete hollow tile building. The original plans provided for a building 180 feet in length, consisting of nine bays. In order to come within available funds the building was reduced to 140 feet in length and bays 1 and 2 eliminated to accomplish the same. The plaintiff reduced his bid accordingly and the contract as finally executed called for the smaller building. The specifications called for two down spouts attached to bays 1 and 2; i. e., there were six down spouts from the roof specified in the original plans and only four in the modified' plans. When bays 1 and 2 were eliminated it necessarily eliminated all that was required in constructing the same; but the defendant notwithstanding *763 this fact, compelled the plaintiff to put on six down spouts, the same as in the original plans. Acceptance of the building was refused until the plaintiff complied with this order. The plaintiff did the work under protest, but he should have done more. The contract, in Article 10, pointed out a method of procedure in case of a dispute of this nature. The plaintiff, instead of pursuing his remedy under the contract, contented himself with a protest and went forward with the work without a written order so to do, or obtaining the decision of the Chief of Ordnance as well as the Secretary of War under Article 13 of the contract. When the plaintiff signed the contract he knew of these provisions and what was required to protect .his rights. Article 16 of the specifications is especially explicit upon the subject of claims for extra work and the court is powerless to read these provisions out of the contract.
The item claimed under Finding IX is not allowable. The same falls within the authority conferred by the contract on the inspector in Article 3 of the contract, a subject heretofore discussed.
The case of Crook v. United States, supra, determines the claim under Finding X. The final paragraph of Article 6 of the contract brings the same within the cited case. The contract provides as to delays: “ But none of the above causes shall constitute the basis for an action of damages against the United States.”
The petition is dismissed. It is so ordered.
GRai-iam:, Judge; Hay, Judge; Downey, Judge; and Campbell, Ghief Justice, concur.